UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
TOMMIE COPPER INC., a New York corporation,   :   Civil Action No.
                                              :
                          Plaintiff,          :   **COMPLAINT FOR TRADEMARK**
                                              :   **INFRINGEMENT, UNFAIR**
                                              :   **COMPETITION, AND**
                                              :   **DECLARATORY JUDGMENT**
v.                                            :
                                              :   **14 CV 1991**
IDEAVILLAGE PRODUCTS CORP.,                   :
A New Jersey corporation,                     :
                                              :
                          Defendant.          :   JURY TRIAL DEMANDED
                                              :
                                              :   JUDGE BRICCETTI
------------------------------------------------------------x

Tommie Copper Inc. (hereinafter "Plaintiff" or "Tommie Copper") brings this action against Ideavillage Products Corp. (hereinafter "Defendant" or "Ideavillage") and complains and alleges as follows:

### INTRODUCTION

1.  This is an action for federal trademark infringement and federal unfair competition in violation of the Federal Lanham Act, 15 U.S.C. § 1051 *et seq.*; trademark infringement under the laws of New York; and unfair competition under the laws of New York against Ideavillage for its use of Tommie Copper's COPPER FLEX mark on or in connection with the offer and provision of goods and/or services. This is further an action for a declaratory judgment that Tommie Copper's use of its COPPER FLEX mark does not and will not infringe any right of Ideavillage and that Tommie Copper's rights in the COPPER FLEX mark predate any purported right in the mark owned by Ideavillage.

2. Tommie Copper hereby seeks (1) a preliminary and permanent injunction against Ideavillage's use and exploitation of any trademark confusingly similar to Tommie Copper's COPPER FLEX mark, including the marketing, offer for sale, and/or sale of any product under the COPPER FLEX mark; (2) all damages arising from Ideavillage's past and present infringement and unfair acts, including all statutory damages, and Tommie Copper's attorneys' fees and costs for having to bring this suit to enforce its trademark rights; (3) a declaratory judgment that Tommie Copper's use of the COPPER FLEX mark does not infringe any right of Ideavillage; and (4) a declaratory judgment that Tommie Copper's rights in the COPPER FLEX mark predate any purported right in the mark held by Ideavillage.

## PARTIES

3. Tommie Copper is a New York corporation having a place of business at 74 South Moger Avenue, Mount Kisco, New York 10549.

4. On information and belief, Ideavillage is a New Jersey corporation having a place of business at 155 US Highway 46 #4, Wayne, New Jersey, 07470.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) over the federal trademark infringement and unfair competition, which arise under the Federal Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; the Court has jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 over the unfair competition claim and trademark infringement claim under New York law; and the Court has jurisdiction pursuant to 28 U.S.C. §§ 2201-02 over the declaratory judgment claims, which arise under the Declaratory Judgment Act.

6. Upon information and belief, this Court has jurisdiction over Ideavillage because it does business in New York.

7. Upon information and belief, Ideavillage hosts an interactive website, available at www.getcopperflex.com, through which Ideavillage offers to sell compression garments under the COPPER FLEX mark.

8. Upon information and belief, Ideavillage does business in New York by hosting an interactive website, available at www.ideavillage.com, through which it offers to sell and sells "the most successful consumer product in the 'as seen on tv' industry" to residents in New York.

9. Upon information and belief, Ideavillage regularly ships goods to residents of New York.

10. Through such conduct, Ideavillage has purposefully availed itself of the privileges of conducting business in the New York state, and, when engaging in such conduct, it was reasonably foreseeable that Ideavillage would be subjected to this Court's jurisdiction.

11. Venue is proper under 28 U.S.C. § 1391(b) because the claim arose in this district and under 28 U.S.C. § 1391(c).

12. Designation of this case for assignment to White Plains is proper under Local Rule 18 because the claims arise in major part in the Counties of Dutchess, Orange, Putnam, Rockland, Sullivan and Westchester (the "Northern Counties") and Tommie Copper resides in Westchester County.

## Facts

**A.   Tommie Copper's Compression Garment Business.**

13. Tommie Copper develops, manufactures, and sells compression garments manufactured with copper-infused fabric technology. Tommie Copper's compression garments are designed to provide enhanced athletic performance, speed muscle and joint recovery, and provide relief from aches and pains.

14. Tommie Copper's compression garments are designed and marketed to appeal to those customers seeking an active lifestyle.

15. Tommie Copper markets and sells its compression garments through its interactive website, available at www.tommiecopper.com ("the Tommie Copper website"). Copies of screen captures of portions of the Tommie Copper website are included in Exhibit 1.

16. A wide variety of men's and women's compression garments are available through the Tommie Copper website, including ankle sleeves, calf sleeves, elbow sleeves, knee sleeves, wrist sleeves, long sleeve shirt, short sleeve shirts, jackets, t-shirts, shorts, tights, and undershorts, among other types of garments.

17. In addition to offering to sell compression garments, the Tommie Copper website provides an opportunity for customers to learn about and interact with the Tommie Copper brand though content published on the website.

18. Tommie Copper was founded in 2010 and began selling compression garments in May of 2011.

19. Since it was founded, Tommie Copper has experienced exponential growth. Tommie Copper attributes this growth to the quality of its products, its substantial investment in marketing and brand building, and its emphasis on providing superior customer service.

20. In December of 2011, Tommie Copper applied to register its company name as a trademark for its products. A copy of the trademark registration for TOMMIE COPPER issued by the USPTO is included as Exhibit 2.

21. In its first twelve months of business, Tommie Copper sold to more than one million customers.

22. In 2013, Tommie Copper doubled the number of its employees, from twenty employees at the beginning of 2013 to more than forty employees by the end of 2013.

23. In 2013, Tommie Copper hired a new chief executive officer, Malcolm Robinson, with 19 years of experience as group president of fashion brands including Izod, Van Heusen, and Timberland.

24. Tommie Copper opened its first flag ship store in 2013 in Mt. Kisco, New York.

25. Tommie Copper extensively markets its compression garments using professionally produced commercials that it refers to as Tommie Copper TV. Tommie Copper TV shows are about how people everywhere, from mothers to firemen to professional athletes, are doing what they do better with Tommie Copper compression garments.

26. Tommie Copper's commercials are accessible by customers via the Tommie Copper website, the Tommie Copper YouTube channel, and through cable television. Exhibit 3 includes a screen capture of the Tommie Copper YouTube channel, as well as a screen shot from iSpot.tv summarizing Tommie Copper TV commercials published on cable television.

27. Tommie Copper's compression garments have generated substantial demand and excitement. As a result, a number of imitators have begun selling compression garments that mimic those offered for sale by Tommie Copper. In an effort to boost sales and ride off the considerable good will generated by Tommie Copper's substantial investment, a number of imitators have intentionally misappropriated Tommie Copper's intellectual property associated with Tommie Copper's compression garments. As a result, Tommie Copper regularly polices its intellectual property to protect its intellectual property rights and its substantial investment in its brands.

## B.   Tommie Copper Adopted the COPPER FLEX Mark.

28.   In or around the summer of 2013, Tommie Copper decided to develop a brand name for its fabric technology to further enhance and distinguish the position of its products relative to that of its competitors.

29.   Through the development of a new brand name for its fabric technology, Tommie Copper also sought to distinguish is proprietary fabric technology in the mind of the consumer, including potential licensees of its fabric technology.

30.   After a period of internal analysis and deliberation, Tommie Copper decided to adopt the term COPPER FLEX as a trademark for the fabric technology used to manufacture its compression garments.

31.   Tommie Copper performed a search of public databases for records that could potentially block Tommie Copper from adopting the COPPER FLEX mark for its fabric technology. Based on the results of these searches, Tommie Copper decided to go ahead with its plan to adopt the COPPER FLEX mark.

32.   By the beginning of September of 2013, Tommie Copper planned to roll out the COPPER FLEX mark on its compression garment products in the first half of the 2014 calendar year.

33.   In order to ensure that Tommie Copper could move forward with the COPPER FLEX mark and to obtain the earliest possible priority date, Tommie Copper filed an intent-to-use trademark application with the USPTO.

34.   On September 27, 2013, Tommie Copper filed an application to register COPPER FLEX with the USPTO in international class 024 for textile fabrics for use in making clothing and household furnishings all featuring copper-infused yarn.

35. Tommie Copper filed its application based on its bona fide intention to use the mark in commerce.

36. The USPTO assigned serial number 86/076,647 ("the '647 application") to Tommie Copper's application. A copy of the printout for the application from the USPTO website establishing status and title and a printout of the prosecution history is included as Exhibit 4.

37. The USPTO conducted a substantive review of Tommie Copper's application. The USPTO concluded that the Tommie Copper's application to register COPPER FLEX satisfied the statutory requirements for registration of a trademark.

38. The USPTO issued a notice of publication on January 22, 2014 for the COPPER FLEX mark, stating that it would publish the mark in the Official Gazette on February 11, 2014 because the mark appeared to be entitled to registration.

39. Tommie Copper began using the COPPER FLEX mark in commerce in direct association with its fabric technology on January 29, 2014.

40. The COPPER FLEX mark was printed on a number of different types of compression garments offered for sale by Tommie Copper at its Mt. Kisco store and through the Tommie Copper website beginning on January 29, 2014.

41. The COPPER FLEX mark was printed on hang tags that were affixed to a number of different compression garments offered for sale by Tommie Copper at its Mt. Kisco sale and through the Tommie Copper website beginning on January 29, 2014.

42. An example of such a hangtag is shown below:

7



43.     Copies of images showing Tommie Copper's use of the COPPER FLEX mark in commerce as of January 29, 2014 are included in Exhibit 5.

44.     Tommie Copper first sold compression garments under the COPPER FLEX mark on January 29, 2014. Copies of receipts for those sales are included in Exhibit 6.

45.     Tommie Copper did not file an amendment to allege use of the COPPER FLEX mark in the pending '647 application based on its use in commerce of the mark because it is statutorily precluded from doing because an applicant may not file either an amendment to allege

use or a statement of use between the date the examining attorney approves the mark for publication and the date of issuance of the notice of allowance.

46. The USPTO published the COPPER FLEX mark in the Official Gazette on February 11, 2014.

47. On February 21, 2014, Ideavillage filed an opposition at the USPTO opposing the registration of Tommie Copper's ITU trademark application for COPPER FLEX. Tommie Copper intends to contest the opposition because its rights are senior to those of Ideavillage.

48. Upon information and belief, the USPTO will subsequently issue a notice of allowance in the '647 application.

49. Tommie Copper intends to immediately file a Statement of Use in the '647 application upon issuance of a notice of allowance from the USPTO.

50. Upon information and belief, the USPTO will register the COPPER FLEX mark upon approving Tommie Copper's statement-of-use.

51. The registered COPPER FLEX mark is entitled to a nationwide right of priority of September 27, 2013.

**D.   Ideavillage's Misappropriation of COPPER FLEX and Infringement of Tommie Copper's Trademark Rights.**

52. Upon information and belief, Ideavillage is in the business of marketing and selling "as seen on TV" products through the internet, through television, and through retail partners.

53. Upon information and belief, Ideavillage recognized the commercial success of Tommie Copper's compression garment products and decided to attempt to develop its own compression garment product that imitated Tommie Copper.

9

54. USPTO records indicate that on December 5, 2013 Ideavillage filed an application to register COPPER FLEX with the USPTO in international class 025 for compression devices, compression bands, compression garments, clothing, footwear, headgear, gloves, sleeves, (sic) and socks based on an intent to use the mark in commerce in the future.

55. Upon information and belief, Ideavillage never used the mark in commerce in connection with any goods, let alone the goods identified in its application, on or before December 5, 2013, or any time prior to the filing of this Complaint.

56. The USPTO assigned serial number 86/136,399 ("the '399 application") to Ideavillage's application. A copy of a printout from the USPTO website establishing status and title of the '399 application and its prosecution history are included in Exhibit 7.

57. Upon information and belief, Ideavillage had actual knowledge of Tommie Copper's '647 application and intention to use the COPPER FLEX mark in commerce when Ideavillage decided to file its '399 application on the identical mark.

58. Upon information and belief, on January 15, 2014 Ideavillage filed a second application to register COPPER FLEX with the USPTO. Ideavillage filed its second application in international class 025 for footwear based on an intent to use the mark in commerce.

59. Upon information and belief, Ideavillage never used the COPPER FLEX mark in commerce in connection with any goods, let alone the goods identified in its application, on or before January 14, 2014, or any time prior to the filing of this Complaint.

60. The USPTO assigned serial number 86/166,135 ("the '135 application") to Ideavillage's application. A copy of the printout of the '135 application from the USPTO website establishing status and title and a copy of its prosecution history are included in Exhibit 8.

61.  Upon information and belief, Ideavillage had actual knowledge of Tommie Copper's '647 application when Ideavillage filed its '135 application.

62.  Upon information and belief, Ideavillage sought to register the COPPER FLEX mark in an effort to intentionally interfere with Tommie Copper's trademark rights and in an effort to disrupt Tommie Copper's business.

63.  Upon information and belief, Ideavillage purchased the domain name www.getcopperflex.com on January 6, 2014. A copy of the domain name registration record is included in Exhibit 9.

64.  Upon information and belief, Ideavillage began operating a website after January 6, 2014, accessible via the www.getcopperflex.com, to market compression garments under the COPPER FLEX mark ("the Ideavillage website"). Copies of screen captures of portions of the Ideavillage website are included in Exhibit 10.

65.  Upon information and belief, as of February 19, 2014 a customer could not actually purchase any products through the Ideavillage website.

66.  Upon information and belief, Ideavillage ran several infomercials in January 2014 intended to market its purported compression garments under the COPPER FLEX mark.

67.  Upon information and belief, the infomercials and the website identified a telephone number that customers could call to order a product.

68.  Upon information and belief, as of February 19, 2014 a customer could not order any product via the published telephone number. Upon information and belief, when a customer contacts Ideavillage via the listed telephone number, a representative of Ideavillage informs the customer that the compression garment products are unavailable and suggests another unrelated product to the customer.

11

69. Upon information and belief, Ideavillage has never used the COPPER FLEX mark in commerce in direct association with any product as of the filing of this Complaint.

70. Tommie Copper received a letter from Ideavillage on January 16, 2014 threatening legal action again Tommie Copper if it did not agree to stop using the COPPER FLEX mark ("the cease and desist letter"). A copy of the cease and desist letter is included in Exhibit 11.

71. In the cease and desist letter, Ideavillage claimed that it had been developing a compression product under the COPPER FLEX mark for over a year.

72. Upon information and belief, Ideavillage had not been developing a compression product under the COPPER FLEX mark for over a year.

73. Upon information and belief, Ideavillage decided to adopt the COPPER FLEX mark with actual knowledge the Tommie Copper planned to use this mark and with actual knowledge of Tommie Copper filed a ttrademark application to register the COPPER FLEX mark.

74. Ideavillage claimed in the cease and desist letter that it featured its compression garment product at tradeshows including the NACDS in August 2013 and the ERA in September 2013.

75. Upon information and belief, Ideavillage did not use the term COPPER FLEX in connection with its compression garment product at any tradeshow.

76. Ideavillage claims in its cease and desist letter that Tommie Copper encountered the Ideavillage product bearing a COPPER FLEX mark at the ERA tradeshow in September of 2013.

12

77. Neither Tommie Copper, nor any of its employees, encountered, observed, or otherwise interacted with any product offered by Ideavillage, let alone any product marketed under the mark COPPER FLEX mark.

78. Upon information and belief, the ERA show was held between September 16 and 18 in 2013 in Las Vegas, Nevada.

79. Tommie Copper made a final decision to apply to register the COPPER FLEX mark on or before September 6, 2013.

80. Ideavillage's cease and desist letter admits that its intended use of the COPPER FLEX mark in connection with goods nearly identical to those of Tommie Copper is likely to cause confusion.

81. Ideavillage's intended use of the COPPER FLEX mark in connection with goods nearly identical to those of Tommie Copper is likely to cause confusion.

82. In the cease and desist letter, Ideavillage threatened to take legal action against Tommie Copper if it did not provide prompt written assurance that it will: "(i) immediate (sic) withdraw with prejudice its COPPER FLEX application, Ser. No. 86/076647; (ii) abandon with prejudice its intent to use the mark COPPPER FLEX (sic) and/or cease any actual use of the COPPER FLEX mark and refrain from such use in the future; and (iii) not use or register any designation that is confusingly similar with Ideavillages (sic) trademark COPPER FLEX."

## COUNT I
### Federal Trademark Infringement and Unfair Competition Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

83. Tommie Copper repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

84. This claim is against Ideavillage for trademark infringement in violation of

13

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85. Upon information and belief, Ideavillage has used, is using, and/or intends use Tommie Copper's COPPER FLEX mark for the offer and provision of goods and services in such a way that has and will cause confusion, mistake, or deception.

86. Upon information and belief, Ideavillage's use of Tommie Copper's COPPER FLEX mark for the offer and provision of goods and services has likely caused and will continue to cause confusion of the relevant public and trade.

87. Tommie Copper has been and will continue to be damaged by the confusion, mistake, and deception caused by Ideavillage's use of Tommie Copper's COPPER FLEX mark.

88. Any defect, objection to or fault found with Ideavillage's goods and/or services sold or provided under Tommie Copper's COPPER FLEX mark would necessarily reflect on and seriously injure the reputation Tommie Copper has established for its marks, products, and business.

89. Tommie Copper does not and has never consented to or authorized Ideavillage's adoption or commercial use of Tommie Copper's COPPER FLEX mark for the aforementioned goods and/or services. Ideavillage therefore has infringed and is infringing Tommie Copper's COPPER FLEX mark in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

90. Upon information and belief, at all times relevant to this action, including when Ideavillage first adopted Tommie Copper's COPPER FLEX mark and commenced commercial use of Tommie Copper's COPPER FLEX mark on the aforementioned goods and/or services, Ideavillage knew of the prior adoption and widespread commercial use of Tommie Copper's COPPER FLEX mark, and Ideavillage knew of the valuable goodwill and reputation acquired by Tommie Copper in connection with Tommie Copper's COPPER FLEX mark. Ideavillage's

infringement of the Tommie Copper's COPPER FLEX mark is therefore willful.

91.  Upon information and belief, Ideavillage's use of Tommie Copper's COPPER FLEX mark has caused confusion and mistake and the deception of purchasers as to the source of origin of Ideavillage's infringing goods and/or services. Because of the confusion as to the source caused by Ideavillage's unauthorized use of Tommie Copper's COPPER FLEX mark, Tommie Copper's valuable goodwill developed at great expense and effort by Tommie Copper is being irreparably harmed and is at risk of further damage.

92.  Ideavillage's infringement will continue unless enjoined by the Court.

## COUNT II
## Trademark Infringement Under New York Law

93.  Tommie Copper repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

94.  This claim is against Ideavillage for common law trademark infringement.

95.  In addition to the federal registrations owned by Tommie Copper, as set forth above, Tommie Copper's COPPER FLEX mark enjoys common law rights in New York and throughout the United States. These rights are senior and superior to any rights which Ideavillage's may claim.

96.  Ideavillage's use of Tommie Copper's COPPER FLEX mark is intentionally designed to mimic Tommie Copper's COPPER FLEX mark so as to cause confusion regarding the source of Ideavillage's goods and services in that purchasers thereof will be likely to associate or have associated such products with, as with originating with, or as approved by Tommie Copper, all to the detriment of Tommie Copper.

97.  Ideavillage's infringement will continue unless enjoined by the Court.

## COUNT III
### Unfair Competition Under New York Law

98. Tommie Copper repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

99. Ideavillage's acts as described above constitute unfair competition under New York law.

100. Ideavillage had actual knowledge of Tommie Copper's trademark application when Ideavillage filed its own application to register the exact same mark for substantially similar goods.

101. Ideavillage adopted the COPPER FLEX mark with actual knowledge that it belonged to Tommie Copper and with the intention of to launch a product under the mark to interfere with Tommie Copper rights in the mark and to divert business away from Tommie Copper.

102. Ideavillage's acts constitute unfair competition under the laws of New York and Tommie Copper will be irreparably harmed unless Ideavillage use of the COPPER FLEX mark is enjoined by the Court.

## COUNT IV
### Declaratory Judgment of Noninfringement by Tommie Copper

103. Tommie Copper repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

104. Tommie Copper seeks a declaratory judgment that its continued use of the COPPER FLEX mark will not infringe any right of Ideavillage.

16

## COUNT V
### Declaratory Judgment of Trademark Rights

105. Tommie Copper repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

106. Tommie Copper seeks a declaratory judgment that its rights in the COPPER FLEX mark are senior to any right in the mark owned by Ideavillage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. An order immediately and permanently enjoining Defendant, its officers, members, agents, servants, employees, attorneys, and all persons in active concert or participating with any of them, from:

   i. advertising, marketing, promoting, selling or otherwise offering for sale any good of service that is confusingly similar to Plaintiff's because it uses Plaintiff's COPPER FLEX mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto;

   ii. making or employing any other commercial use of Plaintiff's COPPER FLEX mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto;

   iii. using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendant's products or activities are in any way

      sponsored, licensed or authorized by or affiliated or connected with Plaintiff;

  iv. doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers or investors into the belief that the products or services promoted, offered, or sponsored by Defendant come from Plaintiff, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Plaintiff;

  v. otherwise competing unfairly with Plaintiff in any manner; and

  vi. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (i) through (v), or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (v);

  vii. operating Defendant's website available at www.getcopperflex.com, or any other domain;

B. Direct Defendant to account to Plaintiff for Defendant's profits and order that the Plaintiff's recover its damages arising out of the acts of deception and infringement described above pursuant to 15 U.S.C. § 1117(a) ;

C. Award Plaintiff punitive damages on account of Defendant's gross, wanton, willful, and malicious conduct;

D.      Award Plaintiff costs, attorney's fees, and collection costs pursuant to the agreement executed by the Defendant;

E.      Direct Defendant to deliver up for destruction any and all goods, guarantees, circulars, price lists, labels, brochures, business cards, signs, prints, packages, wrappers, pouches, advertising matter, promotional, and other materials in the possession or control of Defendant bearing Plaintiff's COPPER FLEX mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiff's Mark;

F.      Direct Defendant to supply Plaintiff with a complete list of entities from whom they have conducted business with under Plaintiff's COPPER FLEX mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiff's COPPER FLEX mark;

G.      Direct Defendant to file with the Court and serve on counsel for Plaintiff within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendant has complied with any injunction which the Court may enter in this action;

H.      Award Plaintiff its reasonable attorney's fees along with the costs and disbursements incurred herein as a result of Defendant's intentional and willful infringement;

I.  Order that any of Defendant's assets that are held by or within the control of entities that are subject to the jurisdiction of this Court, be restrained and frozen pending the outcome of this action so that Plaintiff's right to the damages set forth in this Complaint is not later rendered meaningless.

J.  Award Plaintiff's such other and further relief as the Court deems just and proper.

K.  Adjudge that Plaintiff's continued use of the COPPER FLEX mark will not infringe any right of Defendant.

L.  Adjudge that Plaintiff's rights in the COPPER FLEX mark are senior to any right held by Defendant.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: White Plains, New York
       March 20, 2014

ST. ONGE STEWARD JOHNSTON & REENS LLC

/s/ Andy Corea

Andy I. Corea, Esq. (AC0474)
Walter B. Welsh, Esq. (WW3451)
986 Bedford Street
Stamford, Connecticut 06905-5619
Telephone: (203) 324-6155
Facsimile: (203) 327-1096
Email: acorea@ssjr.com
       wwelsh@ssjr.com
       litigation@ssjr.com

*Attorneys for Plaintiff Tommie Copper Inc.*